DEE MILLIGAN v. THE STATE.

No. 8315.   Decided June 11, 1924.

Murder—Circumstantial Evidence—Insufficiency of the Evidence.

Where, upon trial of murder, and a conviction of that offense, defendant appealed to this court, held that to the minds of this court the evidence falls short of the measure set by the law of circumstantial evidence and is insufficient to sustain the conviction, and the judgment must, therefore, be reversed and the cause remanded.

Appeal from the District Court of Bastrop. Tried below before the Honorable R. J. Alexander.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*Tom Garrard*, Attorney for the State and *Grover C. Morris*, Assistant Attorney, for the State.

MORROW, PRESIDING JUDGE.—Murder is the offense; punishment fixed at confinement in the penitentiary for a period of five years.

The evidence relied upon is circumstantial. The appellant is a negro. The deceased, a negro woman, was the wife of Allan Parks. Her home and that of the appellant were about three or four hundred yards distant from each other. On the morning of the 20th day of July, the body of the deceased was discovered by her husband at a point near his residence. According to his testimony, before finding the body, he discovered a place about twenty-five steps from his house where there were a man's tracks, and the ground bore evidence of a struggle. His wife's shoes and a snuffbox were also found. On the 19th of July, there was a picnic at a place called Moab, about eight miles from the homes of the appellant and deceased. Deceased went to this picnic in company with Raymond Wilson and the wife of the appellant. They returned about dark. Appellant's wife was left at her home, and the deceased was brought to her home by Wilson. Appellant attended the picnic in company with Charley Wilson. Allan Parks, husband of the deceased, went with Virg and Jeff Parks and the wife of Virg Parks. The parties last named, save Allan Parks, returned to their respective homes about dark, about the same time that Raymond Wilson reached the home of the appellant. Allan parks remained at or about the picnic until two o'clock in the morning. He left on foot and was sitting or lying upon the ground near the road when he was picked up by Charley Wilson.

Allan Parks testified that upon reaching his home, he observed that the bed had not been disturbed except that some one had sat upon the edge of it. Some twenty-five steps from his house he saw his wife's shoes and a snuffbox. He also noticed that the grass was mashed, and indications of a struggle. He saw footprints of a man. At a distance further on, he found the body of his wife. Antecedent to these discoveries, he followed the footprints of the woman from the vicinity of his own home to that of the appellant, and also traced them returning. On reaching the home of the appellant, he inquired for his wife and was told by appellant's wife that deceased had not been there. The appellant followed to the home of the witness. Upon discovering the body, the witness hollered to the appellant and others who were nearby and they came to the scene. The witness said to the appellant: "Dee, nobody did this but you." Appellant then said: "I am sorry to think you think I done it." He also said in the same conversation that he did not do it. The witness said that the man's footprints were those of the appellant, but in the same connection he said that he had no way of identifying them; that he did not know the size of his shoe; that there were no peculiarities in the tracks. Parks also testified that about a year before the homicide, he, in the presence of his wife and uncle, had a conversa-

97 T. C.—35.

tion with the appellant in which the appellant admitted that on one occasion when Parks was away from home, appellant suggested to the deceased that she go home and spend the night with him; that she remarked that he had his wife and children there and she would not do so. He then remarked that if she would give him fifty cents he would stay with her. She said that she was not afraid to stay alone. This conversation seems to have resulted in no rupture of the pleasant relations between the parties. Appellant, in his testimony, said that it was said merely in a joking manner. The previous conversation with the deceased seems to have taken place in the presence of a kinsman of her husband.

Appellant testified denying all connection with the homicide, and claimed that after his return from the picnic he remained at home, and in this he was corroborated by his wife.

There was testimony that upon examination of the body of the deceased, there was found upon her person evidence that there had been an evacuation from her bowels.

According to the State's testimony, there were some scratches upon the face and arm of the appellant. These he explained with testimony to the effect that on the day before the homicide he had been riding a "pitching horse" after some cattle and that the scratches were due to contact with the underbrush in the pasture where he was at work. The jumper of the appellant found upon his premises was "soiled and stained", and the edge of the wristband of the shirt was soiled by dark dirt. There was a brown substance upon the trousers of the appellant similar to the stain on the clothes of the deceased. There was no analysis made of these stains. Appellant accounted for the stain upon his jumper by the statement that it was caused by leaning against the covering of the seat of the surrey in which he rode to the picnic. The tracks of a man which were described by the State's witness were not measured, nor was there any experiment made to identify them with the footwear of the appellant. This is true, notwithstanding he was present at the time of their discovery or soon after.

There was evidence that deceased and her husband, Allan Parks, quarreled at times.

To our minds the evidence falls short of the measure set by the law of circumstantial evidence. There was no testimony showing that the deceased had been ravished. The evidence of motive on the part of the appellant is obscure. The practical silence of the statement of facts touching the identity of the tracks found near the scene of the struggle, or to disclose the owner of the snuff-box found there, together with the failure to analyze the alleged substances staining the apparel of the accused, are matters which must be put in the balance in favor of and not against the appellant. No unfavorable

hypothesis is found which is not explained by testimony consistent with his innocence.

There are some suspicious circumstances against the appellant, also against the husband of the deceased who was first arrested for the crime. However, against neither have we found evidence of such cogency as to overcome the presumption of innocence with which the law surrounds the accused.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*